# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHAEL ANTHONY TURNER,** | **Case No. CV 15-0020 KES** |
| **Plaintiff,** | |
| **vs.** | **MEMORANDUM OPINION AND ORDER** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified the AR.

## I.    BACKGROUND.

Plaintiff Michael Anthony Turner ("Plaintiff") filed applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") on

February 27, 2012[1] alleging disability commencing September 3, 2009.[2]  AR 230-36 and 237-41.

After the administrative hearing on June 12, 2013 (transcript at AR 50-78), the Administrative Law Judge ("ALJ") issued an unfavorable decision on July 9, 2013.  AR 8-26. The ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of chronic obstructive pulmonary disease, asthma, chronic bronchitis, obstructive sleep apnea, obesity, panic attacks with agoraphobia, mood disorder, and generalized anxiety disorder.  AR 14, ¶ 3.  The ALJ assessed Plaintiff as retaining the residual functional capacity ("RFC") to perform the demands of "light work" as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with the following additional limitations:

> The claimant is unable to climb ladders, ropes, and scaffolds.  He should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  He should avoid working around unprotected heavy machinery, unprotected heights, or uneven terrain.  The claimant can understand, remember, and carry out simple job instructions.  He can maintain attention and concentration to perform simple, routine and repetitive tasks in a work environment free of fast-paced production requirements.  The claimant can have occasional interaction with coworkers and supervisors, and no interaction with the general public.  He can work in

---

[1] Plaintiff filed an earlier application on September 22, 2009 and was found "not disabled" in a final decision dated January 14, 2011.  AR 82-94.  Plaintiff was unrepresented during those proceeding and explained, "Well, the problem me not getting an attorney is they said I need a doctor that say I could not work and, you know, most doctors just look at me and tell me I have anxiety, but they won't say that I can't work."  AR 29.  In the current case, the ALJ found "changed circumstances" and therefore declined to adopt the prior ALJ's RFC which permitted Plaintiff to perform medium work.  AR 11.

[2] The month and year of Plaintiff's claimed disability onset corresponds with the month and year when he was fired from his last job as a forklift operator, not because of any disability, but for stealing a sandwich.  AR 34.

1             an environment with occasional changes to the work setting and occasional

2             work-related decision-making.

3 AR 16, ¶ 5.

4       The ALJ compared the residual functional capacity assessed to the demands of

5 Plaintiff's past relevant work as a forklift operator and decided that Plaintiff could no longer

6 perform that kind of work.  AR 20, ¶ 6.  The ALJ accepted testimony of a vocational expert

7 ("VE") that an individual of Plaintiff's age, education, work experience and residual functional

8 capacity could perform the work of garment sorter and cleaner housekeeping.  AR 20, ¶ 10.

9 Accordingly, the ALJ concluded that Plaintiff was not "disabled" between September 3, 2009,

10 and the date of the decision.  AR 21, ¶ 11.

11      **II.   ISSUES PRESENTED**.

12       Plaintiff's appeal from the ALJ's adverse decision raises only one issue:  "Whether the

13 ALJ properly considered the evidence of mental impairment."  JS at DE #23, p. 4.

14       Specifically, the JS focuses on the opinions of Dr. Divy Kikani, M.D., who conducted a

15 consultative psychiatric evaluation of Plaintiff on April 9, 2012.  AR 384-386.  The ALJ said he

16 gave "significant weight" to the opinions of Dr. Kikani and Dr. Bouz (an internist who

17 evaluated Plaintiff's breathing difficulty) and that the functional limitations assessed by these

18 two doctors "are essentially the same as those included in the residual functional capacity

19 assessment" determined by the ALJ.  AR 19.

20       Plaintiff disagrees with the ALJ's description of his own RFC analysis.  According to

21 Plaintiff, the RFC does not adequately "capture the scope of the limitations described by Dr.

22 Kikani."  JS at 9.  Instead, the ALJ failed to include "significant limitations" imposed by Dr.

23 Kikani related to Plaintiff's mental health, while at the same time failing to explain why those

24 limitations were rejected.  JS at 18.  The ALJ can reject the opinion of an examining physician

25 only for specific and legitimate reasons supported by substantial evidence in the record.  JS at

26 8, citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603-04 (9th Cir. 1999).

27       Respondent counters that the RFC *does* incorporate the limitations proposed by Dr.

28 Kikani, although the exact wording of those limitations in the RFC differs from their

articulation in Dr. Kikani's report.  The RFC need not parrot the opinion any particular doctor, but rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."  <u>Rounds v. Comm'r, SSA</u>, 795 F.3d 1177, 1185-86 (9th Cir. 2015).   The determination of a claimant's residual functional capacity is a legal decision reserved to the Commissioner acting through the ALJ.  <u>See</u> 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as …your residual functional capacity…, the final responsibility for deciding these issues is reserved to the Commissioner"), 404.1546(c), 416.946(c) (identifying the ALJ as responsible for determining residual functional capacity).  Respondent contends that the ALJ's RFC analysis is "supported by substantial evidence."  JS at 17.

**III.    DISCUSSION.**

The following table compares the mental health-related limitations suggested by Dr. Kikani to the limitations included in the ALJ's RFC analysis:

| Dr. Kikani | RFC |
| --- | --- |
| (1) Ability to Remember, Understand and Carry Out Instruction | |
| "The patient in my opinion will have no problems remembering, understanding and carrying out complex instructions."  AR 386. | "The claimant can understand, remember, and carry out simple job instructions."  AR 16. |
| (2) Ability to Cope with Work Environment Stress/ Pace, Persistence and Concentration | |
| "Concentration, persistence, and pace are mild to moderately impaired. … Moderate impairment in his ability to persist at normal work situations under customary work pressure.  The patient does have moderate impairment in his ability … to cope with respond appropriately to usual work situations … [and] cope with changes in the | "He can maintain attention and concentration to perform simple, routine and repetitive tasks in a work environment free of fast-paced production requirements.  He can work in an environment with occasional changes to the work setting and occasional work-related decision-making."  AR 16. |

| | |
|---|---|
| routine work setting.  The patient may be expected to show moderate episodes of emotional deterioration at normal work situations under customary pressure."  AR 286-87. | |
| (3) Ability to Interact with Others | |
| "The patient does show moderate impairment in his ability to respond appropriately to coworkers, supervisors and the public."  AR 386. | "The claimant can have occasional interaction with coworkers and supervisors, and no interaction with the general public."  AR 16. |
| (4) Ability to Maintain Workplace Safety | |
| "The patient does show moderate impairment in his ability to … respond appropriately to usual work situations, attendance, safety."  AR 386. | The claimant is unable to climb ladders, ropes, and scaffolds.  He should avoid concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation.  He should avoid working around unprotected heavy machinery, unprotected heights, or uneven terrain.  AR 16. |
| (5) Attendance | |
| "The patient does show moderate impairment in his ability to … respond appropriately to usual work situations, attendance, safety."  AR 386. | The ALJ did not include an express limitation related to attendance. |

In each of these five categories, the RFC is consistent with Dr. Kikani's opinion.

First, as to Plaintiff's ability to remember, understand and carry out instructions, the ALJ's RFC is more restrictive than Dr. Kikani's opinion, limiting Plaintiff to work involving simple job instructions rather than complex.  Cf., AR 386 and 16.

Second, as to Plaintiff's ability to cope with work environment stress and still focus on his job (*i.e.*, maintain pace, persistence and concentration), Dr. Kikani found that Plaintiff would have moderate impairments coping with "normal work situations," "customary pressure" and "change." The ALJ's RFC protects Plaintiff from these conditions by restricting him to an atypical workplace, *i.e.*, one in which he is asked to "perform simple, routine and repetitive tasks" and that is "free of fast-paced production requirements" with only "occasional changes." Cf., AR 286-87 and 16.

Third, while Dr. Kikani opined that Plaintiff has a moderate impairment in responding appropriately to coworkers, supervisors and the public, the ALJ's RFC was again more restrictive, limiting Plaintiff to work requiring only "occasional interaction with coworkers and supervisors, and *no* interaction with the general public." Cf., AR 386 and 16.

Fourth, Dr. Kikani found that Plaintiff has moderate impairment in responding to normal workplace safety situations. AR 386. The ALJ addressed this concern by including in the RFC limitations to a workplace environment where many normal safety concerns will not arise, *i.e.*, Plaintiff can only do work that does not involve climbing, working with heavy machinery, working at heights or on uneven terrain, or exposure to fumes, odors, dusts, gasses, and poor ventilation. AR 16.

As for five, Dr. Kikani found that Plaintiff is moderately impaired in the area of attendance. AR 386. He did not, however, quantify this limitation by opining that Plaintiff's mental health would restrict him to jobs that allow him to miss "X" days of work each month. Dr. Kikani's report also did not provide a customized definition for a "moderate" limitation, so he presumably used that word consistent with the Social Security Administration's definition. Form HA-1152-U3 defines a "moderate" limitation as "[t]here is more than a slight limitation in this area, *but the individual can still function satisfactorily*." Office of Disability Adjudication and Review, Social Security Administration, Form HA-1152-U3, Medical Source Statement of Ability to Do Work-Related Activities (Mental) (emphasis added); Cantu v. Colvin, 2015 U.S. Dist. LEXIS 29367, *45-46 (N.D. Cal. Mar. 10, 2015) (citing Form HA-

1152-U3 as providing the definition of a "moderate" limitation).[3]   In other words, Dr. Kikani

opined that Plaintiff "can still function satisfactorily" in the area of workplace attendance.  The

ALJ, therefore, was not required to specify in the RFC a higher-than-normal number of days

per month that Plaintiff would need to be absent or, alternatively, give specific and legitimate

---

[3]   The Commissioner argues that a moderate limitation means "being able to perform the activity occasionally – that is, less than constantly but more than never."  JS at 15.  This definition is difficult to apply to attendance.  Plaintiff points to the definition of "moderately limited" in Program Operations Manual System ("POMS") DI 244510.060 titled "Mental Residual Functional Capacity Assessment" at ¶ B.2.c.  JS at 10-11.  The cited paragraph does not contain a definition.  Rather, this policy suggests that medical consultants ("MC") use Form SSA-4734-F4-SUP to document opinions of "what an individual can do despite his/her impairment."  Id. at ¶ A.1.  The policy describes how to use the form saying that there are "twenty mental function items" grouped into four categories:   understanding/memory, concentration/persistence, social interaction and adaptation.  Id. at ¶ 2.b.  One of the listed mental functions is, "The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms …."  See, http://ssaconnect.com/tfiles/SSA-4734-F4-SUP.pdf, item #11.  To the right of each mental function is a "series of decision checkblocks" that enable the MC to indicate whether the claimant's functioning is "not significantly limited, moderately limited, markedly limited, no evidence of limitation or not ratable on available evidence."  POMS DI 244510.060 ¶ 2.c.  Because "moderately limited" falls in between "not significantly limited" and "markedly limited" on this form, Plaintiff argues that "moderately limited" as used by Dr. Kikani means "greater than not significantly limited and less than markedly limited."  JS at 10-11.  Plaintiff then argues that if a limitation is more than "not significant," it must be significant.  JS at 11 ("A significant limitation that does not quite reach the level of a market limitation must get rated as moderately limited.")  Saying that a mental disorder "significantly" limits a person's ability to work is more akin to saying it "seriously" limits that ability.  See Form HA-1152-U3 and POMS DI 25225.020 ¶ B.1 (both defining a "marked limitation" as one that "interferes seriously" with work functions).  Dr. Kikani did not opine that Plaintiff has marked limitations in the area of attendance – merely moderate.   By not finding a marked limitation, Dr. Kikani necessarily did not opine that Plaintiff's absenteeism would "interfere seriously" with his ability to work.   The Court, therefore, finds that the definition of a moderate limitation as "more than a slight limitation in this area, but the individual can still function satisfactorily" is the best interpretation of Dr. Kikani's opinion.

reasons for supposedly "rejecting" Dr. Kikani's finding of a "moderate" attendance impairment.

The Court's conclusion is supported by several factors.  First, the apparent reason Dr. Kikani opined that Plaintiff would have "moderate" attendance impairment is his underlying diagnosis that Plaintiff suffers from unspecified mood and anxiety disorders.  AR 386.  The ALJ, by imposing limitations on Plaintiff's workplace stress that are *more restrictive* than those suggested by Dr. Kikani (such as no contact with the general public), mitigated against the kinds of stressors likely to aggravate Plaintiff's mood and anxiety disorders and cause absenteeism.  The RFC, therefore, was a reasonable translation of Dr. Kikani's concerns about absenteeism.  This is consistent with the ALJ saying that he intended for the RFC to state the same functional limitations as assessed by Drs. Kikani and Bouz.  AR 19.

Second, the regulations that describe how ALJs are to formulate RFCs addressing mental abilities do not require ALJs to specify how many days each month a claimant might be absent.  Rather, the RFC must state the claimant's "residual functional capacity for work activity *on a regular and continuing basis*."  20 C.F.R. §§ 404.1545(c); 416.945(c) (emph. added).  Working on a "regular and continuing basis" is not inconsistent with occasional absenteeism, *i.e.*, a "moderate" level of absenteeism that is "more than slight, but the individual can still function satisfactorily."  Thus, the ALJ's failing to modify the "default" position of any RFC (*i.e.*, the RFC states the limitations under which the claimant can work "on a regular and continuing basis") did not constitute a "rejection" of Dr. Kikani's opinion.

Third, neither Dr. Kikani nor any of the other medical consultants who evaluated Plaintiff's psychological health opined that Plaintiff would need to miss "X" days of work each month.[4]  In formulating the RFC, an ALJ is not required to make up restrictions that are not

---

[4] The ALJ gave "some weight" to Dr. Abejuela's opinions regarding Plaintiff's "mental limitations."  AR 19.  Dr. Abejuela determined that Plaintiff's psychiatric limitations "range from none to mild."  Id., citing AR 335.  Dr. Abejuela listed a number of mild mental impairments that would limit some of Plaintiff's functional capacities, but said nothing about his ability to maintain regular attendance.  AR 335.

1   actually articulated by any medical consultant, or to give "legitimate and specific reasons" for

2   rejecting restrictions that are not actually articulated.  Instead, the hypothetical questions posed

3   to the VE based on the RFC need only set forth the claimant's "substantial, supported

4   limitations and restrictions" as supported by the record.  <u>Magallanes v. Bowen</u>, 881 F.2d 747,

5   756 (9th Cir. 1989).

6       This is particularly true where counsel for Plaintiff did nothing to bring the issue of

7   regular attendance to the ALJ's attention.  At the 2013 hearing, Plaintiff's counsel knew Dr.

8   Kikani had opined Plaintiff was "moderately" limited in the area of attendance.  Plaintiff's

9   counsel also knew that the RFC resulting from Plaintiff's 2011 hearing specified that "he must

10  be allowed to miss work twice per month."  AR 86.  After the VE opined that a hypothetical

11  person with Plaintiff's RFC could work as a sorter or housecleaner, counsel could have easily

12  asked the VE if her opinion would change if mental health issues caused that hypothetical

13  person to miss 1 day of work each month, or 2 days, or 3 days, etc.[5]  Instead, the only testimony

14  about time off from work was a question posed by the ALJ asking the VE to assume a

15  hypothetical person who had the limitations in the RFC and also "would require unscheduled

16  work breaks of various duration and frequency during an eight hour day."  AR 75.  The VE

17  testified there would be "no work" for such a person.  <u>Id</u>.  When the ALJ then asked Plaintiff's

18  counsel if he had any questions for the VE, he replied, "Based on that last question, I don't

19  think so, Your Honor."  AR 76.

20      That last question and the VE's answer do not help Plaintiff.  The phrase "unscheduled

21  work breaks of various duration and frequency" is extremely vague, but clearly not equivalent

22  to a merely "moderate" attendance impairment that would indicate missing work at a rate that

23  still permits Plaintiff to "function satisfactorily."  No medical consultant opined that Plaintiff

24  could only work with "unscheduled work breaks of various duration and frequency."

25

26

27  [5] Of course, even such specific testimony would not have enabled the ALJ to incorporate Dr.

28  Kikani's opinion exactly into the RFC, since Dr. Kikani did not quantify Plaintiff's "moderate" attendance limitation.

Thus, if there was any error here, it was either harmless or invited. Harmless error is error that did not "materially impact" the ALJ's decision. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), citing Shinseki v. Sanders, 556 U.S. 396, 409 (2009). Plaintiff cannot point to any evidence showing that the ALJ's failure to include a limitation that Plaintiff be absent "X" days a month in the RFC was harmful error because (1) no MC actually opined that Plaintiff needs to be absent a certain number of days each month and (2) the VE was not asked for testimony about what rate of absenteeism would affect the availability of unskilled, light work.

Plaintiff argues that *any* limitation on attendance is material because, "The Commissioner identifies maintaining regular attendance and punctuality within customary tolerances as not only critical but usually strict." JS at 10, citing POMS DI 25020.010 ¶ B.3.e (listing as a "mental ability critical for performing unskilled work" the ability to "maintain regular attendance and be punctual within customary tolerances. These tolerances are usually strict. Maintaining a schedule is not critical."). It is clear, however, that the need to miss work occasionally does not equate to a finding of disability. In connection with Plaintiff's prior application, the ALJ *did* incorporate into the RFC a limitation that Plaintiff might miss work twice a month, and the VE still testified that he could perform thousands of unskilled jobs. AR 44-47.

Ultimately, it is the Plaintiff's burden to prove his disability. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). Counsel's failure to suggest quantified limits on Plaintiff's regular work attendance before the ALJ or the VE is tantamount to inviting error. "Counsel are not supposed to be potted plants at administrative hearings. They have an obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding so that they can be addressed." Solorzano v. Astrue, 2012 U.S. Dist. LEXIS 4059, *17 (C.D. Cal. Jan. 10, 2012). "This is particularly true in the context of social security cases like this one where counsel from this firm routinely ask for fees in excess of

$500 per hour, sometimes in excess of $1,000 per hour, for their work in these cases, signifying among other things their obvious expertise in the field."  Id.

## IV.   CONCLUSION.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

Dated: September 29, 2015

_Karen E. Scott_
_____
KAREN E. SCOTT
United States Magistrate Judge